IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| RAYMOND H. GORE, | ) | Civil Action No. 3:05-1415-HMH-JRM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Defendant. | ) | |
| | ) | |

This case is before the Court pursuant to Local Rule 83.VII.02, et seq., D.S.C., concerning the disposition of Social Security cases in this District. Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his claims for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB").

## ADMINISTRATIVE PROCEEDINGS

On September 26, 2002, Plaintiff applied for SSI and DIB. Plaintiff's applications were denied initially and on reconsideration, and he requested a hearing before an administrative law judge ("ALJ"). After a hearing held October 10, 2003, at which Plaintiff appeared and testified, the ALJ issued a decision dated March 15, 2004, denying benefits. The Appeals Council reviewed and vacated the decision, remanding it to the ALJ for a new hearing. A second hearing, at which Plaintiff appeared and testified, was held on October 19, 2004. The ALJ issued a second decision dated January 21, 2005, denying benefits. The ALJ, after hearing the testimony of a vocational expert ("VE"), concluded that work exists in the national economy which Plaintiff can perform.

Plaintiff was forty-eight years old at the time of the ALJ's decision. He has a high school education and past relevant work as a maintenance worker, cook, and janitor. Plaintiff alleges disability since July 17, 2002, due to a weak and damaged heart caused by a heart attack.

The ALJ found (Tr. 20-21):

1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.

2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3. The claimant's ischemic cardiomyopathy, hypertension, chest pain, fatigue, and dyspnea are considered "severe" impairments in combination based on the requirements in the Regulations 20 CFR §§ 404.1520(c) and 416.920(b).

4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix I, Subpart P, Regulation No. 4.

5. The undersigned finds the claimant's allegations regarding his limitations are not fully credible for the reasons set forth in the body of the decision.

6. The claimant has the residual functional capacity to: perform sedentary, unskilled work with restrictions.

7. The claimant is unable to perform any of his past relevant work (20 CFR §§ 404.1565 and 416.965).

8. The claimant is a "younger individual" (20 CFR §§ 404.1563 and 416.963).

9. The claimant has a "high school education" (20 CFR §§ 404.1564 and 416.964).

10. Transferability of skills is not an issue in this case (20 CFR §§ 404.1568 and 416.968).

11. The claimant has the residual functional capacity to perform a significant range of sedentary work (20 CFR §§ 404.1567 and 416.967).

12. Although the claimant's exertional limitations do not allow him to perform the full range of sedentary work, using Medical-Vocational Rule 201.21 as a framework for decision-making, and based on the testimony of the vocational expert, there are a significant number of jobs in the national economy that he could perform. Examples of such jobs include work as: a surveillance system monitor (This is sedentary, unskilled work with 155,000 jobs existing in the national economy); a bench worker (This is sedentary, unskilled work with 36,000 jobs existing in the national economy); or a telephone quotation clerk (This is sedentary, unskilled work with 44,100 jobs existing in the national economy).

13. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR §§ 404.1520(g) and 416.920(g)).

On March 14, 2005, the Appeals Council denied the Plaintiff's request for review on March 14, 2005, making the decision of the ALJ the final action of the Commissioner. Plaintiff filed this action on May 13, 2005.

The only issues before this Court are whether correct legal principles were applied and whether the Commissioner's findings of fact are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389 (1971) and Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1972). Under 42 U.S.C. §§ 423(d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, Plaintiff has the burden of proving disability, which is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months...." See 20 C.F.R. § 404.1505(a) and Blalock v. Richardson, supra.

## **DISCUSSION**

Plaintiff alleges that: (1) the ALJ erred in not finding that he met or equaled the Listing of Impairments ("Listings"), 20 C.F.R. Pt. 404. Subpt. P., App. 1, at § 4.04 based on the combined effect of his impairments;[1] (2) the ALJ erred in finding that Plaintiff's mental impairments were not severe; (3) the ALJ failed to properly evaluate Plaintiff's credibility; and (4) the ALJ erred in disregarding the statements of Plaintiff's treating physicians. The Commissioner contends that the ALJ's decision is supported by substantial evidence.[2]

---

[1]"For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria." Sullivan v. Zebley, 493 U.S. 521, 530 (1990). It is not enough that the impairments have the diagnosis of a listed impairment; the claimant must also have the findings shown in the listing of that impairment. 20 C.F.R. § 404.1525(d). The Commissioner compares the symptoms, signs, and laboratory findings of the impairment, as shown in the medical evidence, with the medical criteria for the listed impairment. 20 C.F.R. § 404.1526.
　　The Listings at § 4.04B require a claimant to show that he has:
　　Ischemic heart disease, with chest discomfort associated with myocardial ischemia,,
　　[]while on a regimen of prescribed treatment []. With one of the following:
> (B)　Impaired myocardial function, documented by evidence (as outlined under 4.00C3 or 4.00C4b) of hypokinetic, akinetic, or dyskinetic myocardial free wall or septal wall motion with left ventricular ejection fraction of 30 percent or less, and an evaluating program physician, preferably one experienced in the care of patients with cardiovascular disease, has concluded that performance of exercise testing would present a significant risk to the individual, and resulting in marked limitation of physical activity, as demonstrated by fatigue, palpitation, dyspnea, or anginal discomfort on ordinary physical activity, even though the individual is comfortable at rest[.]

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 4.04B.
　　Here, Plaintiff fails to show that he met or equaled the Listings at § 4.04B. Specifically, Plaintiff's ventricular ejection fraction (although diminished at 36-37%) was not of listing-level severity. Further, he was able to undergo a stress test.

[2]Substantial evidence is:
> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is

(continued...)

4

      A.      <u>Treating Physicians</u>

Plaintiff alleges that the ALJ erred in disregarding the opinions of his two treating cardiologists that he is disabled. The Commissioner contends that the ALJ properly discounted these opinions to the extent that they were inconsistent with other substantial evidence and Plaintiff's residual functional capacity ("RFC").

Although it is not binding on the Commissioner, a treating physician's opinion is entitled to great weight and may be disregarded only if persuasive contradictory evidence exists to rebut it. <u>Craig v. Chater</u>, 76 F.3d 585, 589 (4th Cir. 1996); <u>Coffman v. Bowen</u>, 829 F.2d 514, 517 (4th Cir. 1988), and <u>Foster v. Heckler</u>, 780 F.2d 1125, 1130 (4th Cir. 1986). In those cases, the court emphasized the importance of giving great weight to the findings of the plaintiff's treating physician. <u>See</u> <u>also</u> <u>Mitchell v. Schweiker</u>, 699 F.2d 185 (4th Cir. 1983). The court in <u>Mitchell</u> also explained that a treating physician's opinion should be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." An ALJ, therefore, must explain his reasons for disregarding a positive opinion of a treating physician that a claimant is disabled. <u>DeLoatche v. Heckler</u>, 715 F.2d 148 (4th Cir. 1983).

The Commissioner is authorized to give controlling weight to the treating source's opinion if it is not inconsistent with substantial evidence in the case record and it is well supported by clinical and laboratory diagnostic techniques. 20 C.F.R. § 404.1527(d)(2). The Court in <u>Craig</u> found by negative implication that if the physician's opinion "is not supported by clinical evidence or if

---

²(...continued)
"substantial evidence".
<u>Shively v. Heckler</u>, 739 F.2d 987, 989 (4th Cir. 1984); <u>Laws v. Celebreeze</u>, 368 F.2d 640, 642 (4th Cir. 1966). It must do more, however, than merely create a suspicion that the fact to be established exists. <u>Cornett v. Califano</u>, 590 F.2d 91, 93 (4th Cir. 1978).

it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 589.

On July 17, 2002, Plaintiff suffered an acute anterior myocardial infarction. He underwent coronary angioplasty and stenting of his left anterior descending coronary artery. He was also treated for chronic bronchitis and chronic obstructive pulmonary disease ("COPD"). Plaintiff remained in the hospital until September 26, 2002. Tr. 119-135. He was hospitalized again from September 15 to 18, 2002, for dizziness and light headedness which were believed to be caused by postural hypertension. Tr. 142-146.

After his surgery, Plaintiff was initially treated by Dr. Jariaki Omar, a cardiologist. Beginning in December 2002, after Dr. Omar relocated, Plaintiff was treated by Dr. Gavin M. Leask and Dr. Amit V. Pande, cardiologists who are in practice together. Tr. 175-201. Plaintiff was treated in the Loris, South Carolina Emergency Room on April 24, 2003, for complaints that he became light headed while watching television. He was diagnosed with near syncope and hypocalcemia. Tr. 163-169. On May 29, 2003, Plaintiff was treated at the Loris Emergency Room for shortness of breath and a racing heart. He was diagnosed with palpitations and anxiety. Ativan was prescribed. Plaintiff was hospitalized again from January 18 to 20, 2004. A persantine cardiolite study showed a large fixed anterior wall defect without any reversible ischemia and with moderate left ventricle ("LV") dysfunction. Plaintiff's ejection fraction[3] was 35%. See Tr. 186.

---

[3]Ejection fraction is:
the proportion of the volume of blood in the ventricles at the end of diastole that is ejected during systole; it is the stroke volume divided by the end-diastolic volume, often expressed as a percentage. It is normally 65 [plus or minus] 8 percent; lower values indicate ventricular dysfunction.

Dorland's Illustrated Medical Dictionary 734 (30th ed. 2003).

On December 30, 2002, Dr. Leask opined that Plaintiff could not return to his previous occupation and that he was disabled at that time from a cardiac standpoint. Tr. 180-181. On January 16, 2003, Dr. Leask opined that Plaintiff was disabled and estimated Plaintiff's functional capacity to be Class II.[4]  On October 2, 2003, Dr. Leask wrote a letter to Plaintiff's attorney in which he opined that Plaintiff was significantly impaired by his reduced LV function, and that his ejection fraction was reduced to 36%.  Dr. Leask opined that he did not believe Plaintiff could engage in substantial gainful activity, but anticipated that Plaintiff's maximal exertional capacity was sedentary.  He opined that Plaintiff could lift or carry less than ten pounds occasionally and less than five pounds frequently, stand and walk for about two hours in an eight-hour day, and sit for six hours in an eight-hour workday.  Dr. Leask thought that Plaintiff had slight anxiety, but no significant psychological problems related to his pain.  Tr. 175-176.  On May 27, 2004, Dr. Leask opined that, based on Plaintiff's significant symptoms and LV dysfunction, Plaintiff was disabled.  Tr. 185.  In October 2004, Dr. Leask completed a "Medical Statement" in which he wrote that Plaintiff had been diagnosed with dilated congestive cardiomyopathy with fatigue on exertion and dyspnea on mild exercise.  Dr. Leask noted that Plaintiff had a LV ejection fraction of 37%, anginal pain, the inability to carry on physical activity, and marked limitations of physical activity.  He classified Plaintiff as a Class III patient, indicating marked limitations in physical activity.  Dr. Leask also opined that Plaintiff suffered from COPD with dyspnea on exertion and chest pain, which limited him from

---

[4]Functional Class II is applied to "[p]atients with cardiac disease resulting in slight limitation of physical activity. They are comfortable at rest. Ordinary physical activity results in fatigue, palpitation, dyspnea, or anginal pain."  Class III is applied to "[p]atients with cardiac disease resulting in marked limitation of physical activity. They are comfortable at rest. Less than ordinary activity causes fatigue, palpitation, dyspnea, or anginal pain."  See Sellers v. Heckler, 590 F.Supp. 1141, 1143 n. 1 (D.C.N.Y. 1984).

standing more than fifteen minutes at a time, sitting no more than sixty minutes at a time, and lifting more than five pounds occasionally. Tr. 197.

Dr. Pande completed a RFC assessment in April 2004, in which he opined that Plaintiff had coronary artery disease with stable chest pain, hypertension, and ischemic cardiomyopathy. He opined that Plaintiff could walk and/or stand for less than one hour in an eight-hour workday and sit for one to two hours in an eight-hour workday. Dr. Pande thought that Plaintiff was able to lift up to twenty pounds occasionally and could never lift more than twenty pounds. Tr. 191. Although Dr. Pande opined that Plaintiff could perform sedentary work with rest periods as needed, he also wrote that Plaintiff would not be able to work full time (eight hours a day, five days a week). Tr. 190-193.

The ALJ wrote that he discounted these opinions of disability because they were opinions reserved to the Commissioner, the opinions were without substantial support from the other evidence, and the physicians failed to place restrictions on Plaintiff's physical activity and encouraged him instead to exercise. The ALJ also wrote that Dr. Leask's October 2004 opinion should be disregarded because it "directly contradicted" Dr. Leask's October 2003 opinion and Dr. Leask only examined Plaintiff one time during the one year period.

The ALJ's decision to discount the opinions of Plaintiff's treating cardiologists is not supported by substantial evidence. Although Dr. Leask only appears to have examined Plaintiff once between October 2003 and October 2004 (in May 2004), his partner Dr. Pande examined Plaintiff in November 2003 and February 2004. Tr. 186-188. Additionally, Plaintiff was hospitalized again in January 2004 for heart problems. Dr. Pande's opinion of disability also supports the findings of disability of Dr. Leask. Although Dr. Leask's October 2003 opinion discusses a maximum capacity to perform sedentary work, Dr. Leask also wrote that he did not

8

believe that Plaintiff could engage in substantial gainful activity. As discussed above, Dr. Leask wrote prior to and subsequent to that time that he thought Plaintiff was disabled. After the October 2003 letter, the dosage of Plaintiff's blood pressure medication was increased twice (in November 2003 and in May 2004). Tr. 185, 188. Additionally, Plaintiff's medication list also indicates that Dr. Dellinger (presumably Plaintiff's family physician) prescribed medication (Isosorbide) for Plaintiff to take daily for his chest pain and he began Plaintiff on Lipitor for his cholesterol levels. Tr. 117.

      B.     <u>Mental Impairments</u>

Plaintiff also alleges he suffers from depression and anxiety and that the ALJ erred in concluding that these impairments were not severe impairments. The Commissioner contends that the ALJ properly considered Plaintiff's mental condition and found it was not a severe impairment based on the fact that Plaintiff only complained of the limits caused by his heart condition on his disability report, never sought mental health counseling, and Dr. Leask only opined that Plaintiff had slight anxiety.

It is the claimant's burden to show that he had a severe impairment. <u>See</u> <u>Bowen v. Yuckert</u>, 482 U.S. 137, 145 n. 5 (1987). A non-severe impairment is defined as one that does not "significantly limit [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). "Basic work activities" means:

The abilities and aptitudes necessary to do most jobs. Examples of these include --

    (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;

    (2) Capacities for seeing, hearing, and speaking;

    (3) Understanding, carrying out, and remembering simple instructions;

>>(4) Use of judgment;

>>(5) Responding to supervision, co-workers and usual work situations; and

>>(6) Dealing with changes in a routine work setting.

20 C.F.R. § 404.1521(b). An impairment is "not severe" or insignificant only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience. Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984).

In his March 2004 opinion, the ALJ found that Plaintiff's depression and anxiety would result in mild restrictions of activities of daily living; mild difficulties in maintaining social functioning; and moderate deficiencies in maintaining concentration, persistence, and pace, resulting in failure to complete tasks in a timely manner. Tr. 33. In his January 21, 2005 opinion, however, the ALJ found that Plaintiff's mental impairments were "non-severe" because they were situational and sporadic. The ALJ appears to have erred in finding that these mental impairments were non-severe where he earlier found that they would cause moderate deficiencies in maintaining concentration, persistence, and pace.

>C. Credibility

Plaintiff alleges that the ALJ failed to properly evaluate his credibility. Specifically, he argues that the daily activities to which he testified did not differ from those described to his physicians, that claimant's treating physicians statements are consistent with Plaintiff's testimony, and objective medical testing also supports Plaintiff's testimony. The Commissioner contends that the ALJ properly considered both medical and non-medical evidence in finding that Plaintiff's subjective complaints were not fully credible.

In assessing credibility and complaints of pain, the ALJ must: (1) determine whether there is objective evidence of an impairment which could reasonably be expected to produce the pain alleged by a plaintiff and, if such evidence exists, (2) consider a plaintiff's subjective complaints of pain, along with all of the evidence in the record.  See Craig v. Chater, 76 F.3d 585, 591-92 (4th Cir. 1996); Mickles v. Shalala, 29 F.3d 918 (4th Cir. 1994).  Although a claimant's allegations about pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which the impairment can reasonably be expected to cause the pain the claimant alleges he suffers. A claimant's symptoms, including pain, are considered to diminish his or her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence.  20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4).

The ALJ failed to properly evaluate Plaintiff's credibility.  In large part, the ALJ appears to have discounted Plaintiff's credibility because Plaintiff was able to walk around in his yard.  It is unclear how this activity contradicts Plaintiff's own testimony as to limited activities.  Further, the ALJ wrote that he discounted Plaintiff's credibility because Plaintiff's testimony as to his daily activities differed from that described to his physicians.  Review of Plaintiff's medical records, however, reveals that Plaintiff complained to Dr. Leask of ongoing chest pain, aching in his mid-anterior chest region with and without exertion, tightness in his throat and shortness of breath on exertion, and "quite marked" generalized fatigue and exertional dypsnea.  Tr. 180-181.  On January 16, 2003, Plaintiff complained to Dr. Leask of "quite limiting" exertional chest discomfort and shortness of breath and the need to rest after walking one-half a block.  Tr. 177-178.  Plaintiff complained at the Loris ER of lightheadedness while merely watching television on April 24, 2003.

11

Tr. 163.  On May 27, 2004, Plaintiff complained to Dr. Leask of generalized fatigue, tiredness, and intermittent atypical stabbing pain in the mid-chest.  Tr. 184-185.   As noted above, testing also showed moderate LV dysfunction.  See Tr. 118-120.

## CONCLUSION

Reversal is appropriate when "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standing and when reopening the record for more evidence would serve no purpose. "  Breeden v. Weinberger, 493 F.2d 1002, 1012 (4th Cir. 1974).  In such a case, an adverse decision on remand could not "withstand judicial review," therefore, reversal is appropriate without the additional step of directing that the case be remanded to the Commissioner.  See also Coffman v. Bowen, 829 F.2d 514 (4th Cir. 1987).  It is, therefore,

RECOMMENDED that the Commissioner's decision to deny benefits be reversed and this action be remanded to the Commissioner for an award of benefits.

                        Respectfully submitted,

                        s/Joseph R. McCrorey

July 18, 2006
Columbia, South Carolina