IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Raymond H. Gore, Jr., | ) | |
| | ) | |
| Plaintiff, | ) | CA No. 3:05-1415-HMH-JRM |
| | ) | |
| vs. | ) | **OPINION & ORDER** |
| | ) | |
| Jo Anne B. Barnhart, Commissioner of Social Security, | ) ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court with the Report and Recommendation of United States Magistrate Judge Joseph R. McCrorey, made in accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 of the District of South Carolina.[1]  Raymond Gore ("Gore") seeks judicial review of the Commissioner of Social Security's ("Commissioner") denial of his application for supplemental security income ("SSI") and disability insurance benefits ("DIB") under Title II of the Social Security Act.  In his Report and Recommendation, Magistrate Judge McCrorey recommends reversing the Commissioner's decision and remanding for a determination of benefits.  The Commissioner objects to the Report and Recommendation.  For the reasons stated below, the court adopts the Magistrate Judge's Report and Recommendation in part and reverses the Commissioner's decision.

**I. F**ACTUAL AND **P**ROCEDURAL **B**ACKGROUND

---

[1] The recommendation has no presumptive weight, and the responsibility for making a final determination remains with the United States District Court.  See Mathews v. Weber, 423 U.S. 261 (1976).  The court is charged with making a de novo determination of those portions of the Report and Recommendation to which specific objection is made.  The court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or recommit the matter with instructions.  See 28 U.S.C. § 636(b)(1) (West Supp. 2006).

1

The facts are fully set forth in the decision of the administrative law judge ("ALJ"), (R. at 14-16), and summarized as follows.  At the time of the ALJ's decision on July 23, 2004, Gore was a forty-seven-year-old man with a high school education.  (Id. at 14.)  His past employment includes positions as a maintenance worker, a cook, and a janitorial worker.  Gore alleges that he has been disabled since July 17, 2002, due to a heart attack and the resultant damage to his heart.  (Id.)

On September 26, 2002, Gore filed an application for SSI and DIB.  (Id. at 13.)  The application was denied initially and on reconsideration.  (Id. at 38-45.)  After a hearing held October 10, 2003, the ALJ issued a decision dated March 15, 2004, denying benefits.  After review, the Appeals Council vacated the decision, remanding it to the ALJ for a new hearing.  On January 21, 2005, after a hearing on October 19, 2004, the ALJ found that Gore was not disabled because Gore's "medically determinable impairments do not meet or medically equal one of the listed impairments" pursuant to 20 C.F.R. Pt. 404, Subpt. P, App. 1.  (R. at 21.)  Additionally, the ALJ found that although the claimant could not return to his former vocational activity, Gore had "the residual functional capacity to perform a significant range of sedentary work."  (Id. at 21.)  On March 14, 2005, the decision of the ALJ became the final decision of the Commissioner.  Gore filed the instant action on May 13, 2005.

## II. REPORT AND RECOMMENDATION

The Magistrate Judge recommends reversing the decision of the Commissioner and remanding for a determination of benefits.  The Magistrate Judge found that the ALJ erred in: (1) disregarding the statements of Gore's treating cardiologists, Drs. Gavin Leask ("Dr. Leask") and

Amit Pande ("Dr. Pande"); (2) finding that Gore's mental impairments were not severe; and (3) improperly evaluating Gore's credibility. (Report and Recommendation 8, 10-11.)

### III. DISCUSSION OF THE LAW

#### A. Standard of Review

Under 42 U.S.C. § 405(g), the court may only review whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). In other words, the court "must uphold the factual findings of the [Commissioner only] if they are supported by substantial evidence *and* were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (emphasis added).

"A factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). "Substantial evidence" is defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (internal quotation omitted). Hence, if the Commissioner's finding is supported by substantial evidence, the court should uphold the Commissioner's finding even if the court disagrees with it. See id.

#### B. Objections

The Commissioner filed four objections to the Magistrate Judge's Report. First, the Commissioner objects to the Magistrate Judge's conclusion that the ALJ erred in disregarding the statements of Drs. Leask and Pande. (Objections 1.) Second, the Commissioner objects to the Magistrate Judge's finding that the ALJ was precluded from concluding on remand that Gore did

not suffer from a severe mental impairment.  (Id.)  Third, the Commissioner objects to the Magistrate Judge's finding that the ALJ improperly evaluated Gore's credibility.  (Id.)  Finally, the Commissioner objects to the Magistrate Judge's finding that the Commissioner's decision should be reversed rather than remanded for further proceedings.  (Id. 8.)

### 1.  Treating Physician Rule

The ALJ must give controlling weight to a treating physician's opinion if it is not inconsistent with substantial evidence in the case record and it is well supported by clinical and laboratory diagnostic techniques.  20 C.F.R. § 416.927(d)-(e)(1) (2006).  Furthermore, Social Security Ruling ("SSR") 96-2p states that "[a] finding that a treating source's medical opinion is not entitled to controlling weight does not mean that the opinion is rejected."  1996 WL 374188, at *1 (1996).  "It may still be entitled to deference and be adopted by the adjudicator."  (Id.)  When considering the deference accorded to a treating physician's opinion, the ALJ should consider the factors set forth in 20 C.F.R. § 404.1527(d) (2006): (1) "the length of the treatment relationship and the frequency of examination," (2) the "[n]ature and extent of the treatment relationship," (3) the supportability of the treating physician's opinion, (4) the consistency of the opinion with the record as a whole, (5) whether the treating physician is a specialist in the area in which he is offering an opinion, and (6) any other relevant factors.

The ALJ discounted the opinion of Drs. Leask and Pande that Gore was incapable of performing the full range of sedentary work for the following reasons: (1) the Commissioner, not a treating physician, determines whether a claimant is disabled; (2) the other evidence in the record did not substantially support Drs. Leask and Pande's opinions; and (3) Drs. Leask and Pande placed no restrictions on Gore's physical activity and encouraged him instead to exercise.

(R. at 17.) The ALJ also found that Dr. Leask's opinion found in a report dated October 10, 2004 ("October 2004 report"), should be disregarded because it "directly contradicted" Dr. Leask's letter dated October 2, 2003 ("October 2003 letter"), and Dr. Leask only examined Gore once during the intervening period. (Id. at 17.)

The ALJ's statement that Drs. Leask's and Pande's opinions of Gore's disability are given no "special significance" does not support a wholesale rejection of all of their statements regarding Gore's condition. Although a treating physician's opinion on the issue of whether the plaintiff is disabled is not controlling, the ALJ is required to consider the medical basis supporting an opinion of disability. See 20 C.F.R. § 416.927(e)(1) (2006).

While Drs. Leask and Pande consistently opined that Gore was indeed disabled, their reports also contained substantial evidence of Gore's medical conditions on which they based their opinions. For example, on January 16, 2003, Dr. Leask supported his opinion of disability with a diagnosis of ongoing exertional dyspnea and exertional chest pain as the result of "significant [left ventricular] systolic dysfunction." (R. at 177.) In the October 2003 letter, Dr. Leask stated that he anticipated Gore's "quite limiting exertional fatigue and dyspnea" would persist due to "his significant residual left ventricular dysfunction." (Id. at 175.) This finding was again confirmed on May 27, 2004. (Id. at 185.) Such medical findings are entitled to weight under the treating physician rule absent substantial evidence to the contrary.

The court finds that the ALJ's decision to discount Dr. Leask's and Dr. Pande's opinions is not supported by substantial evidence. Dr. Leask only recommended that Gore "attempt" to exercise and provided no parameters describing either a nature or duration of exercise which would contradict a finding of disability. (Id. at 184.) Moreover, Gore has never claimed to be

unable to perform any activity at all. Hence, Dr. Leask's recommendation to attempt to exercise is not inconsistent with Gore's claimed level of disability.

Furthermore, the October 2003 letter does not "directly contradict" the October 2004 report. In the October 2003 letter, Dr. Leask opined that Gore could not "engage in substantial gainful activity" due to "quite limiting exertional fatigue." (Id. at 175.) This is consistent with the finding in the October 2004 report that Gore could not work any hours per day. (R. at 197.) The ALJ relies heavily on the statement in the October 2003 letter concerning Gore's exertional limitations; however, the October 2003 letter is the only instance in which Dr. Leask states that he has not formally evaluated Gore's limitations and that the limits represent an estimate. (Id. at 176.) Furthermore, the limitations in the October 2003 letter do not directly contradict the exertional limitations set forth in the October 2004 report, as they focus on total possible activity per day, while the October 2004 report focuses on how long Gore can perform certain activities continuously for a period of time. (Id. at 176, 197.)

In addition, a review of the record reveals that Gore's symptoms were worsening. The October 2004 report occurred a year later, and on January 16, 2003, Dr. Leask noted that Gore's symptoms were worsening. (Id. at 177.) Hence, the October 2004 report documenting more severe symptoms is consistent with other evidence in the record. Further, Gore's blood pressure medication was increased twice during this time period, and two medications, a cholesterol drug and a medication for chest pain, were added, which supports the conclusion that Gore's condition was, in fact, worsening. (Id. at 117, 184, 187.) Finally, the fact that Dr. Leask only saw Gore once in the period between the two reports does not undermine either report's credibility given the fact that Dr. Leask's partner, Dr. Pande, examined Gore in November 2003 and February

6

2004.  Hence, the Magistrate Judge properly found that the ALJ improperly discounted the opinions of Drs. Leask and Pande.

## 2. Determination of Severe Mental Impairment

Secondly, the Commissioner objects to the Magistrate Judge's conclusion that the ALJ erred in determining that Gore's allegations of depression and anxiety did not constitute severe impairments.  (Objections 1).  Substantial evidence exists to support the ALJ's finding that Gore's mental impairments were not severe.  Nevertheless, the Magistrate Judge concluded that the ALJ was precluded from reaching such a conclusion on remand from the Appeals Council due to his finding in the first hearing that Gore's mental impairments could cause "moderate deficiencies in maintaining concentration, persistence, and pace."  (Report and Recommendation 10.)

On remand, the ALJ "may take any. . .action not inconsistent with the Appeals Council's remand order." 20 C.F.R. §§ 404.977(b), 416.1477(b) (2006).  In the remand order, the Appeals Council specifically instructed the ALJ to further evaluate and develop the ALJ's finding in the first decision that some mental impairment existed.  Therefore, the ALJ's reexamination of the issue of mental impairment was appropriate.  "To hold otherwise would discourage administrative law judges from reviewing the record on remand, checking initial findings of fact, and making corrections, if appropriate."  Campbell v. Bowen, 822 F.2d 1518, 1522 (10th Cir. 1987) (holding that the ALJ acted appropriately by changing a finding of residual functional capacity from "sedentary" to "light" on remand when the remand order only specifically required the ALJ to obtain testimony from a vocational expert regarding the transferability of the claimant's skills to a range of work within his capacity).  Based on the foregoing, the ALJ's

finding that Gore did not suffer from a severe mental impairment is supported by substantial evidence.

### 3.  Gore's Credibility

Third, the Commissioner objects to the Magistrate Judge's determination that the ALJ improperly evaluated Gore's credibility regarding the severity of his condition.  In evaluating a person's subjective complaints of pain or other symptoms, two determinations must be made. Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996).  "First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and *which could reasonably be expected to produce the pain or other symptoms alleged*." Id.  Once this threshold determination is made, "the intensity and persistence of the claimant's pain, and the extent to which it affects [his] ability to work, must be evaluated." Id. at 595.  Importantly, in making these determinations, "[i]t is not sufficient for the adjudicator to make a single, conclusory statement that the 'individual's allegations have been considered' or that 'the allegations are (or are not) credible.'" SSR 96-7p, 1996 WL 374186, at *2 (1996).

Under these standards, the ALJ failed to properly evaluate Gore's credibility.  In part, the ALJ found that Gore's testimony was not credible because Gore's description of his symptoms was not supported by objective medical evidence.  (R. at 16.)  However, as described above, Gore's medical records persistently reveal complaints consistent with his testimony.  It is undisputed that Gore suffered an acute myocardial infarction in July 2002.  (Id. at 119.) Furthermore, the ALJ acknowledges that the medical evidence demonstrates that Gore has

8

"ischemic cardiomyopathy, hypertension, chest pain, fatigue, and dyspnea." (Id. at 18.) There is no evidence that these conditions could not reasonably cause Gore's symptoms.

The ALJ also found Gore was not credible due to the fact that Gore's daily activities could not be objectively verified and that Gore's description of his daily activities was not as limited as would be expected, "given his complaints of disabling symptoms and limitations." (Id. at 16.) Contrary to the ALJ's determination, there is no requirement that Gore's daily activities be objectively verified, only that objective medical evidence exists of an impairment "which could reasonably be expected to produce" the described pain. See Craig, 76 F.3d at 594. As discussed above, this standard was met. Additionally, Gore's testimony that he could walk around his yard does not contradict his other descriptions of his condition such that it would impeach his testimony.

Furthermore, the ALJ's conclusion that Gore described his symptoms inconsistently is not supported by the evidence. Gore's testimony at the hearing regarding the severity of his symptoms was consistent with prior descriptions to Drs. Leask and Pande. As early as 2002, Gore complained of ongoing chest pain, shortness of breath with exertion, generalized fatigue, and exertional dyspnea. (R. at 180.) Gore consistently made these complaints, including in a visit on May 27, 2004. (Id. at 185.) On January 16, 2003, Gore complained of exertional chest discomfort and shortness of breath so severe that it was "quite limiting." (Id. at 177.) On April 24, 2003, Gore visited the emergency room for lightheadedness experienced while watching television. (Id. at 163.) All of these complaints were consistent with Gore's testimony. (Id. 218-25.) Therefore, the Magistrate Judge properly found that the ALJ improperly evaluated Gore's credibility.

9

### 4. Reversal of the Commissioner's Decision

Finally, the Commissioner objects to the Magistrate Judge's determination that the Commissioner's decision should be reversed rather than remanded for further proceedings. Reversal is appropriate when "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standing and when reopening the record for more evidence would serve no purpose." Breeden v. Weinberger, 493 F.2d 1002, 1012 (4th Cir. 1974). Gore filed his claim for SSI and DIB almost four years ago. Moreover, the court finds that there is no need for further hearings or development of the facts. Therefore, the court adopts the Magistrate Judge's recommendation reversing the Commissioner's decision. Based on the foregoing, the court adopts Magistrate Judge McCrorey's Report and Recommendation in part.

Therefore, it is

**ORDERED** that the Commissioner's decision is reversed, and the case is remanded for a determination of benefits.

**IT IS SO ORDERED**.

             s/Henry M. Herlong, Jr.
             United States District Judge

Greenville, South Carolina
August 25, 2006